UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TETRA IMAGES, LLC,

     Plaintiff,

-against-

GRAHALL PARTNERS, LLC, et al.,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

19-CV-05250 (PMH)

PHILIP M. HALPERN, United States District Judge:

  Plaintiff Tetra Images, LLC ("Plaintiff") filed its initial Complaint on June 4, 2019 (Doc. 1), its First Amended Complaint on September 17, 2019 (Doc. 9), and—with Judge Román's leave—its Second Amended Complaint ("SAC"), the operative pleading in this action, on September 19, 2019 (Doc. 16, "SAC").[1] Plaintiff brings one claim under the Copyright Act, 17 U.S.C. § 101 *et seq.*, against Grahall Partners, LLC ("GP"), and Grahall Consulting Partners, LLC ("GCP," and collectively, "Defendants") for unauthorized use of a photograph ("Work"). (*See generally* SAC).

  Plaintiff served GCP's authorized agent with a copy of the Summons and SAC on October 23, 2019 (Doc. 20) and almost six months later, on April 10, 2020, secured a Certificate of Default as to GCP (Doc. 25). On July 21, 2020, in addition to filing a Notice of Voluntary Dismissal as to GP only (Doc. 26), Plaintiff moved for a default judgment, damages, a permanent injunction, costs, and attorneys' fees against GCP by way of an order to show cause, in accordance with this Court's Individual Practices. (*See* Doc. 27 (Proposed Order to Show Cause); Doc. 28 ("Supporting Decl."); Doc. 29 ("Saunders Decl. 1"); Doc. 30 ("Dunne Decl. 1"); Doc. 31 ("Pl. Br."); Doc. 33 (Proposed Default Judgment)). The Court "So Ordered" the Notice of Voluntary Dismissal on July 22, 2020,

---

[1] This matter was reassigned to this Court on April 3, 2020. (*See* Apr. 3, 2020 Min. Entry).

thereby terminating GP as a party herein. (Doc. 34). The next day, July 23, 2020, the Court issued an Order to Show Cause directing GCP to explain by August 14, 2020 "why an order should not be issued . . . in support of Plaintiff's application for the entry of a default judgment . . . ." (Doc. 35). Plaintiff served the Order to Show Cause and supporting papers on July 24, 2020. (Doc. 36).

Approximately eight months later, on March 30, 2021, the Court directed Plaintiff to supplement the documents supporting its motion for default judgment. (Doc. 37). Specifically, the Court directed Plaintiff to amend "the Saunders Declaration and append to it—in admissible, non-hearsay form—documentary evidence supporting the contention that the Work's Fair Market Value is . . . $2,500, as well as evidence, if any, supporting a scarcity factor," and "the Dunne Declaration to indicate whether and how individuals who worked on the case kept contemporaneous time records . . . ." (*Id*. at 2). Plaintiff filed and served the supplemental declarations on April 15, 2021. (Doc. 39, "Dunne Decl. 2;" Doc. 40 "Saunders Decl. 2;" Doc. 41; Doc. 42). As of the date of this Memorandum Opinion and Order, GCP has neither appeared nor responded to any filing in this action.

For the reasons set forth below, Plaintiff's motion is GRANTED in part.

## **BACKGROUND**

Plaintiff alleges that it created the Work, reproduced below, in 2007:



(SAC ¶ 12). Plaintiff registered the Work with the United States Register of Copyrights under Registration Number VA 2-082-974. (*Id*. ¶ 13; *see also* SAC Ex. 1). The registration was effective as of November 29, 2017. (SAC Ex. 1). Despite the fact that Defendants never secured a license to use the Work, Plaintiff identified Defendants' unauthorized use of the Work on a website as early as December 6, 2016. (SAC Ex. 3 at 2; *see also* SAC Ex. 2 (screenshots dated April 18, 2017)).

On or about January 8, 2019, Plaintiff's counsel sent a letter to GP notifying the company of its infringing activity. (SAC Ex. 3 at 2-9).[2] Counsel demanded certain information from GP to calculate a demand for GP's unauthorized use of the Work and advised that GP provide the letter and its attachments "to [its] attorney and insurance carriers." (*Id*. at 5). Counsel noted that, "[i]f we do not receive a response from you or a representative by January 22, 2019, we will take further steps to protect our client's rights." (*Id*.). Approximately one month after the ultimatum deadline, on or about February 19, 2019, Plaintiff's counsel again wrote to GP. (*Id*. at 10). Stating that they had received no response to their January 8, 2019 letter, counsel advised further:

> [A] review of the accused infringing webpage shows that the infringement has been removed. However, this does not dispose of our client's claim. It is imperative that you respond to us. If we do not hear back from you, we will be forced to take further steps to protect our client's rights including by filing a lawsuit against you. We also repeat our demand that you tender this claim to your insurance carrier.

(*Id*.). Plaintiff received no response and initiated the extant action. (SAC ¶ 23).

## **STANDARD OF REVIEW**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

---

[2] Plaintiff maintains that GCP "is a separate business entity within [GP] which specializes in providing consultation services to other business entities to improve their commercial activity." (SAC ¶ 4).

3

party's default." Fed. R. Civ. P. 55(a). Plaintiff's counsel complied with Rule 55(a) and Local Civil Rule 55.1, and the Clerk of Court accordingly issued a Certificate of Default against GCP. (Doc. 25). Given GCP's abandonment of its defense of this case and resulting default, the Court accepts the well-pled factual allegations in the SAC as true and draws all reasonable inferences in Plaintiff's favor. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). However, the "district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain Corp.*, 653 F.2d at 65. In a similar fashion, the Court does not accept blindly the allegations concerning damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). While an evidentiary hearing under Rule 55(b)(2) is not required, a plaintiff must establish through affidavits or other evidence "a basis for the damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks omitted).

## ANALYSIS

I. Infringement Liability

Plaintiff's only claim for relief is for violation of the Copyright Act. "In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020) (quoting *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003)). Plaintiff meets these elements here. As to the first element, Plaintiff alleged that it registered the Work with the United States Register of Copyrights and attached a copy of the Certificate of Registration to the SAC. (SAC ¶¶ 25-26;

4

SAC Ex. 1; *see also* Saunders Decl. 1 ¶ 7 (explaining that Plaintiff "owns all rights, title, and interest, including the copyright, in and to the Work"); Saunders Decl. 2 ¶ (same)). As regards the second element, Plaintiff alleged that it never granted GCP a license to use the Work but GCP used the Work on its website to promote its business (*See* SAC ¶¶ 15-19, 21-22; SAC Ex. 2).

On these facts and this evidence, Plaintiff stated adequately its claim against GCP for copyright infringement under the Copyright Act.

II. <u>Infringement Damages</u>

Under the Copyright Act, "an infringer is liable for either" actual damages and profits or statutory damages. 17 U.S.C. §§ 504(a)(1)-(2). The first category consists of "the actual damages suffered . . . as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The second category, statutory damages, exists in two forms. In its general form, a plaintiff may recover "with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). In its second form, if "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Here, Plaintiff seeks an award of statutory damages because, without GCP's participation in the action, Plaintiff cannot establish the profits generated by GCP's infringing conduct. (Pl. Br. at 9).

"Statutory damages need not be directly correlated to actual damages, but they ought to bear some relation to actual damages suffered." *Mantel v. Smash.com Inc.*, No. 19-CV-06113, 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019) (internal quotation marks omitted). As such, "it is common for courts to tether their assessments of statutory damages to the . . . loss of the fair market value of the license fees . . . ." *McGlynn v. Cube New York Inc.*, No. 20-CV-04546, 2021

WL 1338955, at *3 (S.D.N.Y. Apr. 9, 2021) (internal quotation marks omitted); *see also Cuffaro v. Fashionisto LLC*, No. 19-CV-07265, 2020 WL 5077449, at *3 (S.D.N.Y. July 9, 2020) ("A plaintiff seeking actual damages . . . must show . . . a fair market value, not merely what the copyright owner would have charged." (internal quotation marks omitted)), *adopted by* 2020 WL 5076826 (S.D.N.Y. Aug. 27, 2020). Plaintiff insists that the fair market value for licensing the Work annually to GCP is $2,500. (*See* Saunders Decl. 1 ¶ 15; Saunders Decl. 2 ¶ 9; Pl. Br. at 8). Although this opinion is, on its own, insufficient, *Ward v. Compound Ent. LLC*, No. 18-CV-07268, 2020 WL 6136293, at *6 (S.D.N.Y. Apr. 27, 2020), *adopted by* 2020 WL 4496763 (S.D.N.Y. Aug. 3, 2020), Plaintiff provides evidence of a similar photograph licensed exclusively to Shutterstock, Inc. for $4,000 per year. (Saunders Ex. 4; *see also* Saunders Decl. 1 ¶ 15; Saunders Decl. 2 ¶ 9). Based on this information, it is reasonable to believe that the fair market value for GCP's licensing of the Work would be $2,500 per year. *See Ozuzu v. Function(x), Inc.*, No. 18-CV-06799, 2020 WL 4926247, at *1 (S.D.N.Y. Aug. 21, 2020).[3]

"[A] statutory damages award should significantly exceed the amount of unpaid license fees, so as to put infringers on notice that it costs less to obey the copyright laws than to violate them." *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 198 (S.D.N.Y. 2016) (internal quotation marks omitted). In this scenario, "[c]opyright infringement is deemed willful by virtue of a defendant's default." *Cube New York Inc.*, 2021 WL 1338955, at *3 (internal quotation marks

---

[3] Plaintiff argues that the fair market value of this photograph is subject to "a scarcity multiplier of five to the licensing fee of $2,500.00 . . . ." (Pl. Br. at 9). The Court disagrees. The case Plaintiff relies upon for this proposition, *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376 (3d Cir. 2016), is distinguishable. In *Leonard*, the plaintiff—a photographer of stem cells using electron microscopes in the 1990s—provided expert testimony at trial that license fees by themselves were insufficient to capture the fair market value because they "did not account for scarcity—the rarity of stem cell images—or exclusivity—that is, how [the infringer's] extensive use would be akin to an exclusive license . . . ." *Id*. at 392. The image here is drastically different from the images at issue in *Leonard* and Plaintiff has not provided any expert testimony on these issues. The request for a scarcity multiplier is, consequently, denied.

omitted). Accordingly, the Court has discretion to award statutory damages in this case up to and including $150,000. 17 U.S.C. § 504(c)(2). In determining this number, the Court must consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). "Because [GCP] has not appeared in this action, the Court has no way to evaluate several of these factors." *See Adlife Mktg. & Commc'ns Co. v. Sander Bros. of New York, Inc.*, No. 19-CV-00886, 2021 WL 1558400, at *4 (W.D.N.Y. Apr. 21, 2021). The Court accordingly "draw[s] every reasonable inference on these points against" GCP. *See Ward v. Innosub USA*, No. 19-CV-11100, 2021 WL 1516055, at *4 (S.D.N.Y. Mar. 15, 2021) (internal quotation marks omitted). "In determining by how much a statutory award should exceed a plaintiff's regular licensing fee, courts in this circuit typically apply a multiplier between three and five." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-05721, 2019 WL 312149, at *8 (E.D.N.Y. Jan. 3, 2019), *adopted by* 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019).

On balance, considering GCP's willful infringement alongside its refusal to respond to Plaintiff's correspondence or participate in this action in any way—and the need to deter future infringement—the Court concludes that a multiplier of five times the fair market value is appropriate here. *See Barcroft Media, Ltd. v. Fashion In Me Inc.*, No. 16-CV-07574, 2018 WL 4565889, at *4 (S.D.N.Y. June 5, 2018), *adopted by* 2018 WL 4568727 (S.D.N.Y. July 25, 2018). As such, the Court concludes that the statutory damages due to Plaintiff are five times the fair market value: $12,500.

7

III.      <u>Attorneys' Fees and Costs</u>

The Copyright Act states that the Court "in its discretion may allow the recovery of full costs," which includes reasonable attorneys' fees. 17 U.S.C. § 505. Here, Plaintiff seeks: (1) 8.20 hours of attorney time at a rate of $475.00 per hour for Joel Rothman, the firm's managing partner, $450 per hour for Joseph Dunne, a partner in the firm's New York City office, and $200 per hour for Emily Dabney, a summer associate entering her final year of law school; (2) 3.6 hours of paralegal and/or legal assistant[4] time at rates between $175 and $200 per hour; (3) a $400 filing fee; (4) a cost of $55.97 for costs related to "shipment of documents;" and (5) a cost of $208 for service of process fees. (Dunne Ex. A; Dunne Decl. 1 ¶¶ 2-7; Dunne Decl. 2 ¶¶ 3-8). In order to decide whether to award attorneys' fees under the Copyright Act, "district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144. On consideration of these issues, "[t]he Court determines that it is appropriate here to award attorney's fees and costs to compensate Plaintiff for the amounts it incurred in obtaining judgment by default." *See Johnson v. Classic Material NY, LLC*, No. 19-CV-10529, 2021 WL 1164089, at *5 (S.D.N.Y. Mar. 25, 2021).

The starting point in determining attorneys' fee awards is calculation of the "lodestar" by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation because the lodestar method creates a presumptively reasonable fee. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 188-90 (2d Cir. 2008); *Craine v.*

---

[4] The Court notes a discrepancy between the declaration in support of attorneys' fees and the invoice provided to the Court. In the declaration, counsel states: "[m]y Legal Assistant, Lia DiNuzzo, has a billing rate of $175.00 per hour . . . ." (Dunne Decl. 1 ¶ 7; *see also* Dunn Decl. 2 ¶ 8). The bill, however, does not list Ms. DiNuzzo but instead identifies a paralegal, Natalia Linares—not mentioned in the supporting declaration—with a rate of $175.00 per hour. (Dunn Ex. A). Notwithstanding this issue, the Court believes the rate is reasonable.

*Beyond the W, LLC*, No. 19-CV-02259, 2021 WL 930255, at *3 (E.D.N.Y. Mar. 11, 2021). The hourly rates used in determining a fee award should be "what a reasonable, paying client would be willing to pay . . . ." *Arbor Hill*, 522 F.3d at 184. Reference to market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" can assist the court in determining the reasonable hourly rate to be applied. *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *see also Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, No. 13-CV-01526, 2020 WL 2848232, at *7 (S.D.N.Y. June 1, 2020) (noting that courts in copyright cases consider reasonable rates of $400 to $750 an hour for partners, $200 to $450 for associates, and $150 to $200 for paralegals); *cf. Schwartz v. United States Drug Enf't Admin.*, No. 13-CV-05004, 2019 WL 1299192, at *9 (E.D.N.Y. Mar. 1, 2019), *adopted by* 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019).

As for the amount of attorney time spent reasonably in prosecuting a case, "the court looks to its own familiarity with the case and . . . its experience generally as well as to the evidentiary submission and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks omitted). To establish entitlement to fees, a plaintiff must submit documentation including "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quoting *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)).

A review of the attorney declaration and billing records submitted by Plaintiff, in light of the Court's familiarity with this case, leads the Court to conclude that the rates charged are reasonable for work of this sort in the Southern District of New York, that the number of hours

expended is reasonable, and that the bottom line is reasonable. The Court thus finds that all relevant factors support an award of attorneys' fees in the requested amount of $3,472.50.

Turning to the question of costs, Plaintiff seeks reimbursement of a $400 filing fee, $55.97 connected to "shipment of documents," and $208 for service of process fees. (Dunne Ex. A). Although Plaintiff would be entitled to recover such costs, it has not provided *any* documentation to support the request aside from line item charges on its firm's bill. (*Id.*). In this case, "[w]hile the Court takes judicial notice of the filing fee in this district, the Court cannot simply accept at face value the ledger that [Plaintiff's] counsel has created without any additional evidence of the costs listed therein." *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-01997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017); *see also Greifman v. Grossman & Karaszewski, PLLC*, No. 19-CV-04625, 2021 WL 1226420, at *4 (S.D.N.Y. Mar. 31, 2021); *Strike 3 Holdings, LLC v. Doe*, No. 18-CV-05305, 2020 WL 6875260, at *5 (E.D.N.Y. Nov. 12, 2020) ("In the absence of invoices, receipts or other documentary proof of the costs sought, however, courts will decline to award costs."), *adopted by* 2021 WL 21532 (E.D.N.Y. Jan. 4, 2021); *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 379 (S.D.N.Y. 2010) ("Where an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award any costs.").

The Court accordingly awards costs in the amount of $400, only.

IV. <u>Permanent Injunction</u>

Apart from damages, Plaintiff also seeks a permanent injunction preventing GCP from infringing Plaintiff's copyrighted materials. (Pl. Br. at 12-13). The Copyright Act allows the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). In order to secure this relief, Plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Deciding whether to grant a permanent injunction is a matter of discretion for the Court. *See Am. Infertility of New York, P.C. v. Deep Blue Health New Zealand Ltd.*, No. 17-CV-05666, 2019 WL 10786023, at *11 (S.D.N.Y. Dec. 30, 2019), *adopted by* 2020 WL 4218261 (S.D.N.Y. July 23, 2020). Such relief is usually granted only "where liability has been established and there is a threat of continuing infringement." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 637 (S.D.N.Y. 2018) (internal quotation marks omitted).

Here, even if Plaintiff established the latter two factors (*i.e.*, the balance of hardships and public disservice), it has not met the first two—it has established neither the existence of an irreparable injury nor that money damages are inadequate to compensate the injuries sustained by Plaintiff's conduct. Strengthening further this conclusion, the fact that GCP has removed the Work from its website (SAC Ex. 3 at 10) leads the Court the conclude that there is little, if any, threat of continuing infringement. The request for a permanent injunction is, therefore, denied.

V. <u>Pre- and Post-Judgment Interest</u>

Finally, Plaintiff seeks both pre- and post-judgment interest. Insofar as the request for prejudgment interest, the application is denied. First, "[t]he Copyright Act neither allows nor prohibits an award of pre-judgment interest, and the issue of the permissibility of pre-judgment interest is unresolved in this Circuit." *Capitol Recs., Inc. v. MP3tunes, LLC*, No. 07-CV-09931, 2015 WL 13684546, at *4 (S.D.N.Y. Apr. 3, 2015). As the authority to grant prejudgment interest is not clear—and Plaintiff did not address the issue in its brief—the Court is not inclined to grant

that relief. Second, even if the Court were inclined to consider the request, Plaintiff would not qualify for pre-judgment interest under either of the two methodologies applied by courts in the Second Circuit. Under one regime, applications for "pre-judgment interest should be reserved for 'exceptional' circumstances." *Id*. at *4. Nothing about the present fact pattern is exceptional. Under the other, courts rely on prejudgment interest as a tool "to help deter willful copyright infringement." *Id*. The statutory damages assessed already—five times an annual license—is sufficient to deter further infringement. The request for prejudgment interest is, therefore, denied.

The application for post-judgment interest, however, is granted. Post-judgment interest shall be calculated from the date of entry of Judgment by the Clerk of the Court in accordance with 28 U.S.C. § 1961.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a default judgment is GRANTED IN PART. Specifically, the motion is granted to the extent Plaintiff is awarded: (1) statutory damages in the amount of $12,500; (2) reasonable attorneys' fees in the amount of $3,472.50; (3) costs in the amount of $400.00; and (4) post-judgment interest as calculated under 28 U.S.C. § 1961. Plaintiff's requests for pre-judgment interest and a permanent injunction are, however, denied.

The Clerk of the Court is respectfully directed to enter Judgment in favor of Plaintiff in accordance with the terms of this Memorandum Opinion and Order and close this case.

**SO ORDERED:**

Dated: White Plains, New York
July 6, 2021

_____
PHILIP M. HALPERN
United States District Judge